## Case No. 18,128.

### YATES et al. v. LITTLE et ux.

### [6 McLean, 508.] [1]

Circuit Court, D. Michigan. June Term, 1855.

EQUITABLE JURISDICTION—RELIEF FROM MISTAKE —APPRAISEMENT FOR PARTITION.

Three persons having an interest in fifty lots in Saginaw city, they selected certain persons to appraise lots, and on this appraisement they made partition and executed quit claims. To the complainants were assigned lots one and two, with the warehouses and wharf, valued at seven thousand dollars. To the defendants was assigned lot three, with the wharf, at two hundred dollars. The warehouse, after the papers were all executed, was found to extend twenty feet on lot three, which adjoined lot numbered two. The warehouse was worth six thousand and five or six hundred dollars, it being divided into stores of thirty-three feet. The defendants claim twenty feet of the warehouse on the lot three, from which the plaintiffs gave a quit claim, not supposing that any part of the warehouse was on it. A bill was filed to correct the mistake, to which the defendants demurred. The court overruled the demurrer, holding that, under the circumstances stated in the bill, the mistake was a matter for equitable jurisdiction and relief.

[Cited in brief in Ashmead v. McCarthur, 67 Pa. St. 328.]

In equity.

Mr. Holbrook, for complainants.

Mr. Campbell, for defendants.

McLEAN, Circuit Justice. This is a bill in chancery, which represents that the complainants [Yates and Woodruff] owned three equal undivided fourth parts, and the defendant, William L. P. Little, was seized and possessed of one undivided fourth part of all the real estate in the city of Saginaw, known and commonly called the improved fifty lots. That the complainant Yates was entitled to two-fourths, and the complainant Woodruff to one-fourth; and to make an equitable partition of the lots in value, it was agreed between them that they should be appraised by Eleazer Jewett, Gardner D. Williams, and Charles L. Richmond, in regard to the above lots and other property, which embraced the interest of other parties. And on the 14th of September, 1848, the ap-

[1] [Reported by Hon. John McLean, Circuit Justice.]

praisers met at Saginaw city, and after viewing the premises and duly deliberating thereon, did determine on their report, in regard to the fifty lots as follows: Lots one and two in block thirty, with the warehouse and wharf were worth seven thousand dollars; that lot number three, in the same block, with the wharf, was worth two hundred dollars; that lot number one in block thirty-five, vacant, was worth seventy-five dollars; that lot eleven, in block thirty-four, with dwelling house, was worth three hundred and fifty dollars; that lot seven, in block twenty-eight, and Richmond's store, were worth five hundred dollars; that lot eight, vacant, was worth sixty dollars; that lot nine, same block, with Cushway's house, was worth five hundred and sixty dollars; that lot ten, vacant, was worth sixty dollars; that lot six, in block eighteen, with the shoe shop on it, was worth one hundred and sixty dollars; that lots one, two, seven and eight, in block twenty-seven, with Webster's house and barn, were worth four thousand dollars; that lots three, four, five and six, vacant, were worth forty dollars each, one hundred and sixty dollars; that lots nine, ten and eleven, were worth two hundred and twenty-five dollars; that lot twelve, in the same block, with joiner's shop, was worth three hundred dollars; that lot seven, block thirty-two, with Little's office was worth one hundred and ninety dollars; that lots eight and nine, with Little's house, were worth thirteen hundred and eighty dollars; that lots one, two and three, in block one hundred and twenty-one, vacant, were worth seventy-five dollars; that twelve lots in block one hundred and sixty-six, were worth five hundred and thirty dollars; that south of Cape street, lots one, two, three and four, vacant, in block ten, were worth one hundred and ten dollars; that lots five, six, seven and eight, same block, were worth one hundred and sixty dollars; that lots three and four, in block seventeen, were worth sixty dollars.

After the partition, it was agreed that the fifty lots, so called, owned by the parties, have been partitioned, and it was further agreed that Messrs. Yates and Woodruff shall take, as their portion of the property, block numbered twenty-seven, entire, with all the buildings, improvements and appurtenances; also lots numbered one and two, in block numbered thirty, and lots numbered seven and eight, in block numbered twenty-eight, with the buildings and improvements thereon. And W. L. P. Little agreed to quit claim unto the said Yates and Woodruff, all his right and interest above allotted to them as above. And the bill states that the above agreement was consummated, with a slight exception of a modification agreed to, as to the property which was to be released to the complainants, but not as to the appraisal, which remained the basis of the partition. On the 1st of May, 1849, the defendant exe-

cuted a quit claim deed from the above property to the complainants; and they executed a like deed to the defendant for lot three, on block thirty, north of Cape street, together with other lots.

The complainants allege that the appraisement of lots one and two was made and accepted, under the belief that the warehouse stood wholly on those lots, and that lot numbered three was a vacant lot, with a wharf in front thereof, which was released by the complainant to the defendant at the valuation thereof; and the bill charges that such was the belief of the defendant. But the complainants allege they have since discovered that lots one and two extended only one hundred feet in front on the Saginaw river, and that the warehouse, which is a very commodious one, fronts on the river one hundred and twenty feet, being twenty feet on lot number three. And the complainants say that until after the agreements were all executed, the above discovery was not made; and since it has been made the complainants have tendered to the defendant the full value of the ground occupied by the warehouse on number three. That the warehouse, being divided into stores of thirty feet front, will be irreparably injured by cutting off twenty feet. That lot three was valued and conveyed to the defendant as a vacant lot, with a wharf in front. And the complainants pray, that relief may be given, and the mistake corrected, &c. To the bill the defendant files a demurrer. And for cause of demurrer states, that complainants have made no case for relief; that they have not set out the deeds and writings, that the charges are not made specifically, and that the complainants have not offered to do equity, &c.

The case made in the bill is one of flagrant injustice, though it occurred, not by the contrivance of the defendant, but through the mistake of the appraisers and of the parties. Lots one and two, with warehouse and wharf, were valued at seven thousand dollars. Can any one suppose that one hundred feet only, of the warehouse was valued? Can any one doubt, that the entire warehouse and the ground on which it stood, with the wharf, were included in the valuation? The facts are so clear, looking at the face of the bill, in this respect, that no proof could be more satisfactory. By this mistake the defendant has got more than he was justly entitled to, and the question is whether he can conscientiously retain this advantage. Twenty feet of the warehouse, at the rate at which it was valued, not including the ground, could not be less than ten or eleven hundred dollars. And although the defendant has been applied to, he has refused to correct the mistake. His lot adjoining with the wharf, was appraised at two hundred dollars, and the defendant received it at that price. And he has refused three hundred and fifty dollars for the twenty feet of lot, which would be within twenty-five dollars of the sum charged him for the entire lot. This does not present a very favorable aspect of the defendant's case; and yet he refuses to do justice, or, in other words, is determined to hold twenty feet of the warehouse, which is on his lot. And the question is, can he do so conscientiously. The counsel for the defendant insist that he can, and that the complainants, by reason of their negligence are not entitled to relief.

It is insisted that the relief prayed cannot be given, as the appraisers were appointed by the parties, being judges of their own choosing, and that their decision cannot be set aside. The bill does not specially pray to have the award set aside, but for general relief, from the mistake in the partition, by the parties themselves, and the consequent injustice to the complainants. A mistake of the arbitrators is a ground to set aside an award, and no mistake could be more palpable than the one committed in this case. Lots one and two, including the warehouse and wharf, were valued at seven thousand dollars, which, in the partition, were assigned to the plaintiff. Now these lots were not specifically valued, but as connected with the warehouse; and in this view, the appraisers estimated the value of twenty feet more ground than the lots one and two contained. And when to this ground is added, the twenty feet of the warehouse, both of which the defendant claims, instead of the vacant lot, as described and valued, it makes a clear case of injustice, that any court, having the power, would, in some mode correct. To refuse this, on the ground that the plaintiffs had been negligent of their rights, under the circumstances, would be a mockery of justice. The injustice is so clear that it is matter of surprise, how the defendant should consent to take advantage of the mistake. And it is hoped for his own sake, that the allegations of the bill are not accurate. If the conveyance had been executed for the ground in front occupied by the warehouse, which would have taken twenty feet from lot numbered three; it would have given no more, in all probability, than was in the mind of the appraisers. And yet, under such circumstances, chancery would have corrected the error, by making the proper deduction from lot number three.

The parties were misled and very naturally, by the report of the appraisers. In making partition and executing conveyances, they were governed by that report. They failed to do what the plaintiffs and defendant intended to do, and it is most unjust and inequitable for the defendant to claim the advantage, in the partition, which the mistake has given him. The mistake has chiefly arisen from the parties themselves, and although the mistake of the appraisers led to the thing that was done, the case is not more the error of the arbitrators, than the error of the parties. Suppose a party had agreed to purchase a certain tract of land, and through mistake a different tract was conveyed to him, would not this be

corrected? Such a mistake often occurs in the conveyance of town lots. No honest man would hesitate to correct such an error, and a refusal to do so, would authorize a court of chancery to correct it. Where an individual has been grossly negligent of his own rights, in some peculiar cases, chancery will not relieve him; as where an individual fails to procure evidence in a trial at law which he might have procured, equity will not relieve him. But the case before us is not one of mere negligence within the meaning of the books. The plaintiffs were non-residents, as appears from the declaration, and this may account for the mistake in the partition, unless the contrary be shown.

Acts done through mistake, by principal or agent, are not binding. Harmer v. Morris [Case No. 6,076]. Mistakes and fraud are equally relievable in equity. Dunlap v. Stetson [Id. 4,164]. A mistake of facts, going to the essence of the contract, avoids it. Hammond v. Allen [Id. 6,000]. A bargain, founded upon material misrepresentations of matters of fact, even though they were inadvertently made through the mutual mistake of the parties, or by mistake of the grantors alone, will be annulled in equity. Daniell v. Mitchell [Id. 3,562]. A mistake in the description of lands intended to be mortgaged, may be corrected in equity. Bank of U. S. v. Piatt, 5 Ohio, 540; Hunt v. Freeman, 1 Ohio, 490.

In 1 Story, Eq. Jur. § 150, it is said: "In like manner, where the fact is equally unknown to both parties, or where each has equal or adequate means of information, or where the fact is doubtful from its own nature, in every such case, if the parties have acted with entire good faith, a court of equity will not interpose; for, in such cases, the equity is deemed equal between the parties; and when it is so, a court of equity is generally passive, and rarely exerts a jurisdiction. Thus, where there was a contract by A to sell to B for twenty pounds, such an allotment, as the commissioners under an inclosure act should make for him; and neither party, at the time, knew what the allotment would be, and were equally in the dark as to the value; the contract was held obligatory, although it turned out, upon the allotment, to be worth two hundred pounds." This turned upon the uncertainty of what the value of the allotment would be. and whether it was more or less, the contract was valid. In section 151, it is said: "The general ground, upon which these distinctions proceed, is, that mistake or ignorance of facts in parties is a proper subject of relief, only when it constitutes a material ingredient in the contract of the parties, and disappoints their intentions by a mutual error; or where it is inconsistent with good faith, and proceeds from a violation of the obligations, which are imposed by law upon the conscience of either party." And again, in section 152, the author says: "One of the most common classes of cases, in which relief is sought in equity, on account of a mistake of

facts, is that of written agreements, either executory or executed. Sometimes, by mistake, the written agreement contains less than the parties intended; sometimes it contains more; and sometimes it simply varies from their intent, by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties." Durant v. Durant [1 Cox, Ch. 58]. In Calverly v. Williams, 1 Ves. Jr. 210, Lord Thurlow said: "No doubt, if one party thought he had purchased, bona fide, and the other party thought he had not sold, that is a ground to set aside the contract, that neither party may be damaged; as it is impossible to say, one shall be forced to give that price for part only, which he intended to give for the whole; or that the other shall be obliged to sell the whole for what he intended to be the price of part only. Upon the other hand, if both understood the whole was to be conveyed, it must be conveyed. But again, if neither understood so, if the buyer did not imagine he was buying any more than the seller imagined he was selling this part, then this pretence to have the whole conveyed, is as contrary to good faith upon his side, as the refusal to sell would be in the other case. The question is, does it appear to have been the common purpose of both to have conveyed this part."

The argument is, that relief cannot be given, as the court cannot say what the appraisement would have been without the twenty feet. The answer to this is, that the partition was intended to be made on the estimated value of the parcels of property made by the appraisers, so that this objection is not insuperable. Lapse of time, and change of value in the property, is alleged in the argument; but this does not arise on the demurrer. If it be admitted that no decree can be made against the wife of the defendant, on the final hearing, or before it, the court can protect her interests.

Upon the above view of the case, the demurrer must be overruled.

———

YATES (PHELPS v.). See Cases Nos. 11,081 and 11,082.

YATES (PRICE v.). See Case No. 11,418.

YATES (ROBERTS v.). See Case No. 11,919.

YATES (SMITH v.). See Case No. 13,131.